**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LAKESHA S. HARRISON,                    )    NO. ED CV 18-81-E
                                        )
            Plaintiff,                  )
                                        )
      v.                                )    **MEMORANDUM OPINION**
                                        )
NANCY A. BERRYHILL, DEPUTY               )
COMMISSIONER FOR OPERATIONS,            )
SOCIAL SECURITY,                        )
                                        )
            Defendant.                  )
_____ )

**PROCEEDINGS**


       Plaintiff filed a complaint on January 11, 2018, seeking review

of the Commissioner's denial of disability benefits.  The parties

filed a consent to proceed before a United States Magistrate Judge on

August 27, 2018.  Plaintiff filed a motion for summary judgment on

August 27, 2018.  Defendant filed a motion for summary judgment on

September 26, 2018.  Plaintiff filed a reply to Defendant's motion for

summary judgment on October 10, 2018.  The Court has taken the motions

under submission without oral argument.  See L.R. 7-15; "Order," filed

January 17, 2018.

Plaintiff, a former cashier, asserts disability since January 31, 2010, based on a combination of alleged physical and mental impairments (Administrative Record ("A.R.") 24, 167-73, 188-89). In a prior decision, an Administrative Law Judge ("ALJ") found Plaintiff had severe physical impairments (i.e., degenerative disc disease of the cervical spine, Tietze's syndrome,[1] migraine headaches and asthma) that restrict Plaintiff to a limited range of light work not requiring more than occasional reaching above the shoulder bilaterally (A.R. 26-27). In denying benefits, the ALJ found that Plaintiff could perform her past relevant work as a cashier "as generally performed" (A.R. 32 (adopting vocational expert testimony at A.R. 57-60)). The Appeals Council denied review (A.R. 1-3).

This Court then remanded Plaintiff's claim for further administrative proceedings. See A.R. 860-74 (Memorandum Opinion and Order of Remand and Judgment in Harrison v. Colvin, ED CV 15-1362-E). The Court found that substantial evidence did not support the ALJ's conclusion Plaintiff could perform her past relevant work. The Court observed that the Dictionary of Occupational Titles ("DOT") provides that the job of "cashier II" (DOT 211.462-010) requires "reaching" "frequently," which arguably conflicted with the ALJ's limitation of

---

[1] Tietze's syndrome, which is also called costochondritis, is a condition of unknown origin that is characterized by inflammation of the costochondral (rib) cartilage. See Definitions of "Tietze's syndrome" and "costochondral," available online at http://merriam-webster.com/medical/Tietze's_syndrome and http://merriam-webster.com/medical/costochondral (last visited Oct. 17, 2018).

Plaintiff to no more than occasional overhead reaching.  The Court

ruled that, before the ALJ could rely on the vocational expert's

testimony in apparent conflict with the DOT, the ALJ was required to

resolve the apparent conflict.  <u>See</u> A.R. 863-70 (citing, <u>inter alia</u>,

Social Security Ruling 00-4p).[2]  The Court did not reach any other

issue raised except to determine that reversal with a directive for

the immediate payment of benefits would not have been appropriate

(A.R. 873, n.7).

The Appeals Council subsequently vacated the Commissioner's final

decision and remanded the case to a new ALJ for proceedings consistent

with this Court's prior order (A.R. 825).  The Appeals Council

authorized the ALJ to "offer [Plaintiff] the opportunity for a

hearing, take any further action needed to complete the administrative

record and issue a new decision" (A.R. 825).

On remand, a new ALJ reviewed the record and heard testimony from

Plaintiff and a vocational expert (A.R. 780-90, 797-822).[3]  The ALJ

found Plaintiff suffers from severe cervical degenerative disc

---

[2]    At the time of this ruling, the Court did not have the benefit of the Ninth Circuit's decision in <u>Gutierrez v. Colvin</u>, 844 F.3d 804, 808 (9th Cir. 2016).  In that decision, the Ninth Circuit ruled that there was no "apparent or obvious conflict" between the DOT and a vocational expert's testimony that a claimant who could not reach overheard with her right arm nevertheless could perform work as a cashier.

[3]    At the outset of the hearing, the ALJ advised, without objection: "We're going to start fresh.  I'm not bound by any determinations that were made before.  I'll be making an independent decision in your case."  <u>See</u> A.R. 799; <u>see also</u> A.R. 983-85 (Plaintiff's letter brief submitted to the new ALJ before the hearing acknowledging that review would be <u>de novo</u>).

disease, left shoulder impingement syndrome, migraine headaches and asthma, which restrict Plaintiff to a limited range of light work with no reaching limitations (A.R. 782, 785).[4]  The ALJ relied on vocational expert testimony to find Plaintiff capable of performing her past relevant work as a cashier as generally performed (A.R. 790 (adopting vocational expert testimony at A.R. 816-17)).  The ALJ stated that there now was no conflict with the DOT because "a reassessment of the entire medical record supports the current residual functional capacity" (A.R. 790).

Plaintiff submitted "exceptions," arguing to the Appeals Council, inter alia, that the ALJ assertedly violated the mandate by revisiting the issue of Plaintiff's residual functional capacity (A.R. 957-60). The Appeals Council considered the exceptions but denied review, finding: (1) the prior decision had been vacated and the ALJ gave adequate rationale for the new residual functional capacity assessment; and (2) any error was harmless because the vocational expert opined that a person limited to occasional overhead reaching could still work as a cashier based on the expert's experience, asserting that the DOT does not address overhead reaching (A.R. 770-75).

Plaintiff now contends that: (1) the ALJ erred by not following the rule of mandate and/or law of the case; and (2) the ALJ otherwise erred in evaluating the medical evidence and Plaintiff's subjective complaints.

_____

[4]    The new ALJ found Plaintiff's Tietze's syndrome to be nonsevere (A.R. 783).

# STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may
> not substitute its judgment for that of the ALJ. But the
> Commissioner's decision cannot be affirmed simply by
> isolating a specific quantum of supporting evidence.
> Rather, a court must consider the record as a whole,
> weighing both evidence that supports and evidence that
> detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

///
///
///
///

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are supported by substantial evidence and are free from material[5] legal error. Plaintiff's contrary arguments are unavailing.

## I. The ALJ Did Not Materially Violate the Doctrine of Law of the Case or the Rule of Mandate.

"[B]oth the law of the case doctrine and the rule of mandate apply in the social security context." Stacy v. Colvin, 825 F.3d 563, 567 (9th Cir. 2016) ("Stacy"). The law of the case doctrine sometimes prevents a court from considering an issue that has already been decided by the same court, or by a higher court, in the same case. Id.

The legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court [or in the Social Security context, an ALJ] or an appellate court [or in the Social Security context, a district court]. All rulings of a trial court are subject to revision at any time before the entry of judgment. A trial court may not, however, reconsider a question decided

---

[5] The harmless error rule applies to the review of administrative decisions regarding disability. See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011).

by an appellate court.

United States v. Houser, 804 F.2d 565, 567 (9th Cir. 1986) (emphasis original; citation and internal quotation marks omitted).

Application of the doctrine is discretionary. See United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000). The doctrine, which "is concerned primarily with efficiency," "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." Stacy, 825 F.3d at 567 (citation omitted).

In Stacy, the Ninth Circuit observed that there had been two prior findings by ALJs that the claimant could not perform his past relevant work. Id. In dicta, the Ninth Circuit stated, "this is typically the type of determination that should not be reconsidered under the law of the case doctrine." Id. The Ninth Circuit observed, however, that the ALJ properly had considered new evidence on remand. Id. For this reason, the Ninth Circuit held that the district court had not abused its discretion in declining to apply the doctrine of law of the case. Id.

Similarly, in the present case, there was new evidence before the ALJ on remand, including medical records post-dating the prior administrative decision (A.R. 989-1040). The ALJ was entitled to reevaluate Plaintiff's residual functional capacity in light of the new evidence. See, e.g., Celedon v. Berryhill, 2017 WL 3284519, at *5 (E.D. Cal. Aug. 2, 2017), appeal filed, No. 17-16979 (9th Cir. Oct. 2,

2017) (similarly applying Stacy to find law of the case did not
preclude reevaluation of claimant's residual functional capacity given
new evidence before the ALJ on remand); Belmontes v. Berryhill, 2017
WL 1166275, at *7-8 (E.D. Cal. Mar. 28, 2017) (same).

Additionally, in both the prior action and in these proceedings,
Plaintiff has challenged the ALJs' review of the medical record and
adverse credibility determinations, which had informed both ALJs' Step
2 (severity) and Step 3 (residual functional capacity) determinations.
See Docket No. 16 in Harrison v. Colvin, ED CV 15-1362(E) (Plaintiff's
motion for summary judgment); Plaintiff's Motion, pp. 6-10.  In
previously remanding the matter, the Court chose not to reach these
other issues except insofar as to determine that reversal for the
payment of benefits was not warranted. See A.R. 863-73 & n.7.  The
Court's mandate did not expressly or impliedly resolve any issues
concerning the prior ALJ's Step 2 or Step 3 determinations.  For these
reasons as well, the doctrine of law of the case does not here apply.
See Stacy, 825 F.3d at 567; see also Whaley v. Colvin, 2013 WL
1855840, at *14 (C.D. Cal. Apr. 30, 2013) (finding the law of the case
doctrine would not prohibit an ALJ from reconsidering claimant's
residual functional capacity on remand, where court remanded on Step 5
issue and did not specifically preclude the ALJ from reconsidering
claimant's residual functional capacity but rather allowed the ALJ to
"otherwise re-evaluate his decision"); compare Hall v. City of Los
Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012) (issues decided by
necessary implication may invoke the law of the case doctrine); Ischay
v. Barnhart, 383 F. Supp. 2d 1199, 1217-19 (C.D. Cal. 2005) (finding
law of the case precluded ALJ from revisiting any other issues where

court's remand only authorized ALJ to take additional evidence to determine Step 5 issue and impliedly affirmed ALJ's findings at earlier steps).

The rule of mandate generally provides that a trial court receiving the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it. Stacy, 825 F.3d at 568. In the Social Security context, "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." Sullivan v. Hudson, 490 U.S. 877, 886 (1989) (citations omitted). However, the Administration may "decide anything not foreclosed by the mandate." Stacy, 825 F.3d at 568 (citation omitted); see also United States v. Cote, 51 F.3d 178, 181-82 (9th Cir. 1995) ("the lower court may consider and decide any matters left open by the mandate of the court") (citations and internal brackets omitted).

As explained herein, the Court's remand order did not expressly or impliedly restrict the ALJ to only a "Step 4" or "Step 5" analysis. Hence, the ALJ did not violate the rule of mandate by issuing a new decision addressing other steps in the disability evaluation process. See Stacy, 825 F.3d at 568 (noting that remand orders must be read "holistically"); compare Cameron v. Berryhill, 2018 WL 4776075, at *4 (C.D. Cal. Oct. 1, 2018) (finding that ALJ erred in reconsidering on remand earlier steps in the disability evaluation process and reaching different limitations than a prior ALJ found to exist; the order of remand had instructed the ALJ to determine at Step 4 whether the claimant was capable of performing his past relevant work given his

limitations and specifically directed that "[n]othing in this decision is intended to disturb the ALJ's [residual functional capacity] assessment"). While the ALJ effectively mooted the specific issue on which the Court previously remanded the present case, nothing in the Court's remand order prevented the ALJ from doing so.

In any event, even if the ALJ erred by altering the residual functional capacity assessment on remand, the error was harmless. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (error is harmless when it is "inconsequential to the ultimate nondisability determination") (citation and internal quotations omitted). During the most recent hearing, Plaintiff's counsel presented the vocational expert with a hypothetical question encompassing the residual functional capacity the former ALJ found to exist, and the vocational expert testified that a claimant with that capacity would be able to perform Plaintiff's past relevant work as a cashier, clarifying that the DOT does not address overhead reaching and that the expert was relying on other sources for her opinion (A.R. 816-17, 819-20).[6] The

_____

[6]    Counsel questioned the expert as follows:

Q.    If we added to the hypothetical [for light work] the additional imitation of only overhead reaching bilaterally on an occasional basis, would the claimant be able to perform her past relevant work?

A.    The DOT does not address overhead reaching, but the master description as well as my experience in seeing this work performed in different settings, I do not believe that it would exclude occasional overhead [reaching] as a cashier.

Q.    Okay.

(continued...)

10

vocational expert's testimony that Plaintiff could perform her past relevant work with the limitations the former ALJ found to exist plainly was within the scope of this Court's mandate. The vocational expert provided a sufficient explanation for her opinion to satisfy the Court's concern with the basis for the former ALJ's Step 4 determination. See Social Security Ruling 00-4p (an ALJ "must elicit a reasonable explanation for [any] conflict [with the DOT] before relying on [vocational expert] evidence to support a determination or decision about whether a claimant is disabled");[7] Massachi v. Astrue, 486 F.3d 1149, 1152-54 & n.19 (9th Cir. 2007) (discussing same); see also Gilreath v. Berryhill, 2017 WL 4564707, at *6-7 (C.D. Cal. Oct. 10, 2017) (finding harmless ALJ's error in addressing issues outside the scope of mandate because the ALJ clarified with the vocational expert the issue identified on remand (i.e., whether the claimant could perform other work existing in the national economy

///

///

///

///

_____

[6](...continued)

ALJ: Okay. So you just said it would not preclude the work?

A.    Correct.

Q.    Okay.

A.    Would be able to perform.

(A.R. 819-20).

[7]    Social Security Rulings ("SSRs") are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

consistent with the DOT)).[8]

## II.   **Substantial Evidence Supports the Conclusion that Plaintiff Can Work.**

Substantial evidence supports the administrative conclusion that Plaintiff can work.  In particular, consultative examiners and state agency physicians opined that Plaintiff has fewer limitations than the ALJ found to exist.

Consultative examiner, Dr. Bryan To, prepared an internal medicine evaluation dated March 10, 2010 (A.R. 461-66).  Dr. To reviewed a CT scan showing degenerative disc disease at C5-C6 (A.R. 461).  Plaintiff reportedly complained of: (1) migraine headaches three times a week lasting four hours with medication; (2) atypical chest pain (which she said was costochondritis), aggravated by moving her shoulders and arms; (3) back pain radiating up to her neck and down to her legs, aggravated by sitting for one hour and standing and walking for 30 minutes; (4) multiple joint pains with stiffness in her neck, shoulders, wrists, hands, hips, knees, ankles and feet; and (5) a history of anxiety and insomnia (A.R. 461-62).  On examination, Plaintiff reportedly had lesser grip strength in the left (non-dominant) hand, complaints of range of motion pain in her joints, but

---

[8]   Additionally, as previously noted, the Ninth Circuit subsequently ruled that there was no "apparent or obvious conflict" between the DOT and a vocational expert's testimony that a claimant who could not reach overhead with her right arm nevertheless could perform work as a cashier.  See Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016).

no other abnormal findings (A.R. 462-64).  Dr. To diagnosed migraine headaches, atypical chest pain probably secondary to costochondritis, back pain, multiple joint pain, anxiety and insomnia, all per Plaintiff's report (A.R. 464).  Dr. To opined that Plaintiff would be capable of performing medium work with frequent walking on uneven terrain, climbing ladders, working with heights, bending, kneeling, stooping, crawling, and crouching, and preclusion from working with heavy and moving machinery (A.R. 465).[9]

Another consultative examiner, Dr. Ann Tat Hoang, prepared a complete orthopedic consultation dated July 15, 2013 (A.R. 755-59).  Plaintiff reportedly complained of: (1) neck pain worsened by sitting, standing and lying down; (2) numbness in the right forearm and right hand; (3) constant, sharp and throbbing low back pain worsened by sitting, standing, walking, bending and lifting; and (4) left shoulder and chest pain (A.R. 755).  Dr. Hoang stated that x-rays of the neck and back showed moderate degenerative disc disease at C4-C5 and C5-C6 with reversal of the normal lordotic curve, and that Plaintiff had been prescribed pain medication and some physical therapy (A.R. 755, 758).  On examination, Plaintiff reportedly had tenderness on palpation of the cervical spine, tenderness over L5-S1, reported pain deep within the left shoulder but with negative test results, full range of motion, and no other abnormal findings (A.R. 756-58).  Dr. Hoang diagnosed arthritis and opined that Plaintiff could:

--------

[9]     State agency physician Dr. J. Hartman prepared a Physical Residual Functional Capacity Assessment form dated March 18, 2010, opining that Plaintiff could perform medium work with no manipulative limitations (A.R. 471-75).

(1) occasionally lift and carry up to 50 pounds and frequently lift
and carry up to 20 pounds; (2) sit, stand or walk for four hours at a
time and for six hours in an eight-hour workday; (3) "continuously"
(over 2/3 of the time) use her hands, and "frequently" (1/3 to 2/3 of
the time) use her feet for operating foot controls; (4) occasionally
crouch and frequently perform other postural activities; (5) never
work at unprotected heights, occasionally work in extreme cold and
heat, and frequently work in other environmental conditions; and
(6) work with moderate noise (A.R. 758, 760-65).

The opinions of Dr. To and Dr. Hoang, which found lesser physical
limitations than the ALJ found to exist, constitute substantial
evidence supporting the ALJ's non-disability determination. See Orn
v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (where an examining
physician provides "independent clinical findings that differ from
findings of the treating physician, such findings are 'substantial
evidence'" to support a disability determination) (citations and
internal quotations omitted).

Another consultative examiner, Dr. Earnest Bagner, III, prepared
a complete psychiatric evaluation for Plaintiff dated March 14, 2010
(A.R. 467-70). Plaintiff reportedly complained of anxiety, crying
spells, trouble sleeping, paranoia, migraine headaches, depression,
and difficulty with concentration and memory (A.R. 467). Plaintiff
was not then seeing a psychiatrist or counselor or taking any
psychiatric medications (A.R. 467-68). On examination, Plaintiff
reported feeling depressed and had a tearful affect, moderately
decreased speech and "tight" thought processes, with no other

abnormalities (A.R. 468-69).  Dr. Bagner diagnosed depressive disorder (not otherwise specified) with a note to rule out PTSD (Post Traumatic Stress Disorder), and assigned a Global Assessment of Functioning ("GAF") score of 65 (A.R. 469-70).  <u>See</u> American Psychological Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> ("DSM-IV-TR") 34 (4th Ed. 2000).[10]  Dr. Bagner opined that Plaintiff would have: (1) no limitations completing simple tasks; (2) mild limitations interacting with supervisors, peers and the public; (3) mild limitations maintaining concentration and attention; and (4) mild to moderate limitations handling normal work stresses, completing complex tasks, and completing a normal work week without interruption (A.R. 470).  However, Dr. Bagner also opined that, with psychiatric treatment, Plaintiff should be "significantly" better in less than six months (A.R. 470).[11]

Another consultative examiner, Dr. Thaworn Rathana-Nakintara, prepared a complete psychiatric evaluation dated April 1, 2012 (A.R.

---

[10]    A GAF of 61-70 indicates "[s]ome mild symptoms (<u>e.g.</u>, depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (<u>e.g.</u>, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  <u>See</u> DSM-IV-TR, p. 34.

[11]    State agency physician Dr. H. Skopec prepared a Psychiatric Review Technique form dated April 2, 2010 (A.R. 478-88).  Dr. Skopec opined that Plaintiff's mental impairments are not severe, and assessed only mild limitations in activities of daily living, maintaining social functioning, and in maintaining concentration, persistence and pace, with no episodes of decompensation (A.R. 478-88).  Dr. Skopec stated that it appeared Plaintiff's psychiatric symptoms "do not significantly decrease" her "ability to function"  (A.R. 488).  In July of 2010, Dr. M. Bayar, another state agency physician, reviewed the record and agreed with Dr. Skopec's findings (A.R. 493-94).

666-70).  Plaintiff reportedly complained of anxiety attacks, shaking, crying, nervousness, depression, insomnia, and absent mindedness (A.R. 666).  Plaintiff reported that she had completed two years of treatment with a therapist and that she was feeling better, not depressed or anxious, and also reported that she then was taking Paxil prescribed by her family physician (A.R. 666-67).  Plaintiff claimed she had headaches most of the time, as well as pain in her shoulder and neck (A.R. 667).  Mental status examination produced no abnormal findings (A.R. 668-69).  Dr. Rathana-Nakintara diagnosed adjustment disorder with mixed anxiety and depressed mood and assigned a GAF of 70 (A.R. 669).  Dr. Rathana-Nakintara opined that Plaintiff would have no work-related psychiatric limitations, stated that Plaintiff was adhering and responding well to treatment and gave Plaintiff a good prognosis (A.R. 669).

The opinions of Dr. Bagner and Dr. Rathana-Nakintara, which found that Plaintiff would have no psychologically-based work limitations or that any limitations would be "significantly better" in less than six months with treatment, support the ALJ's non-disability determination. Orn v. Astrue, 495 F.3d at 631-32.

State agency physicians reviewing Plaintiff's claim in 2013 opined that Plaintiff retained a residual functional capacity for light work consistent with the capacity the ALJ found to exist.  See A.R. 87-88, 98-100.  These non-examining opinions, along with those of the state agency physicians from 2010 (A.R. 471-75, 477-88, 493-94), provide further substantial evidence supporting the ALJ's decision. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (where the

opinions of non-examining physicians do not contradict "all other evidence in the record" an ALJ properly may rely on these opinions); Curry v. Sullivan, 925 F.2d 1127, 1130 n.2 (9th Cir. 1990) (same).

To the extent the evidence of record is conflicting, the ALJ properly resolved the conflicts. See Treichler v. Commissioner, 775 F.3d 1090, 1098 (9th Cir. 2014) (court "leaves it to the ALJ" to resolve conflicts and ambiguities in the record); Andrews v. Shalala, 53 F.3d at 1039-40 (court must uphold the administrative decision when the evidence "is susceptible to more than one rational interpretation").

The vocational expert testified that a person with the residual functional capacity the ALJ found to exist could perform Plaintiff's past relevant work as generally performed (A.R. 816-17). The ALJ properly relied on this testimony in denying disability benefits. See Barker v. Secretary, 882 F.2d 1474, 1478-80 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir. 1986).

### III. **The ALJ Did Not Materially Err in Weighing the Medical Evidence.**

Plaintiff argues that the ALJ erred in finding nonsevere Plaintiff's Tietze's syndrome and alleged mental impairments (Plaintiff's Motion, pp. 5-6; Plaintiff's Reply, p. 3). Plaintiff also argues that the ALJ erred in evaluating the opinions of treating physicians, Dr. Agnes Quion and Dr. Khalid Ahmed (Plaintiff's Motion, pp. 6-8). No material error occurred.

///

**A.  Any Error in the ALJ's Severity Findings was Harmless.**

Plaintiff suggests that the first ALJ imposed the original limitation to no more than occasional reaching above the shoulder because of Plaintiff's cervical spine impairment and Tietze's syndrome (Plaintiff's Motion, pp. 4-5).  While the second ALJ found Plaintiff's cervical spine impairment to be severe, the ALJ found Plaintiff's Tietze's syndrome not to be severe (A.R. 782-85).  Instead, the ALJ found that Plaintiff had severe left shoulder impingement syndrome consistent with imaging studies and Dr. Ahmed's treating records (summarized below) (A.R. 782-83, 786-87).  See e.g., A.R. 307 (reporting that December, 2008 cervical spine MRI showed disc bulges at C4-C5, C5-C6, and C6-C7), A.R. 418-19 (November, 2007 cervical spine MRI showing disc protrusions at C4-C5 and C5-C6); A.R. 307 (reporting that December, 2008 left shoulder MRI showed mild impingement and tendinitis but no rotator cuff tear), A.R. 420-21 (November, 2007 left shoulder MRI showing no rotator cuff tear, fracture or dislocation, and "mild diffuse increased signal intensity within the humeral marrow"); A.R. 448 (February, 2010 X-rays of Plaintiff's cervical spine showing mild degenerative disc disease at C4-C5 and C5-C6 with mild spondylosis at C3 through C6); A.R. 449 (February, 2010 cervical spine CT scan showing "early" degenerative disc disease at C5-C6).

When, as here, a claimant is found to have at least one severe impairment, the ALJ is required to consider the functional effects of all impairments, severe and nonsevere.  See Social Security Ruling 96-8p ("In assessing [residual functional capacity], the adjudicator must

18

consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). The ALJ considered Plaintiff's shoulder impairment and associated chest pain in determining Plaintiff's residual functional capacity. Dr. To had diagnosed costochondritis per Plaintiff's report and still found Plaintiff capable of medium work (A.R. 464-65). In finding Plaintiff capable of only light work, the ALJ adopted greater limitations than Dr. To found to exist because Dr. To and others "did not give full consideration to the claimant's shoulder problems . . . relate[d] to lifting and carrying" (A.R. 788). The ALJ did not materially err in finding Plaintiff's Tietze's syndrome nonsevere. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (any Step 2 error is harmless where the ALJ considers the limitations of a nonsevere impairment in determining a claimant's residual functional capacity).[12] Additionally, as noted above, the vocational expert testified that a person limited to occasional overhead reaching would be capable of performing Plaintiff's past relevant work consistent with the DOT (A.R. 819-20).

///

///

---

[12] According to a summary of the medical records, Plaintiff had emergency room visits for chest pain and shortness of breath in 2006 and 2007 – when Plaintiff was still working (A.R. 273-75). In April of 2007, Plaintiff reportedly complained of chest pain and swelling on the left side with pain radiating to her hands (A.R. 275). In August and September of 2007 (after the robbery but before Plaintiff stopped working), Plaintiff reportedly again complained of left sided chest pain similar to pain she experienced previously (A.R. 275-76). These visits suggest that Plaintiff was able to work as a cashier despite swelling and associated pain in her chest.

Plaintiff contends in a conclusory manner that the ALJ erred in failing to find Plaintiff's alleged mental impairments to be severe. See Plaintiff's Motion, p. 6. The ALJ found Plaintiff's "adjustment disorder with mixed anxiety and depression" to be a medically determinable impairment that does not cause more than minimal limitation in the claimant's ability to perform basic work activities (i.e. a nonsevere impairment). See A.R. 783-85 (erroneously stating that Plaintiff had no treatment for mental health symptoms since the alleged onset date).[13] In so finding, the ALJ gave "great" weight to Dr. Rathana-Nakintara's opinion that Plaintiff has no mental health related work limitations and "some" weight to Dr. Bagner's earlier opinion that Plaintiff would have none to mild limitations, except for mild to moderate limitations in handling normal stresses at work, completing complex tasks, and completing a normal work week (A.R. 783-84). The ALJ observed that Plaintiff reported to Dr. Rathana-Nakintara that Plaintiff had completed mental health treatment, was taking Paxil, felt better, and was neither depressed nor anxious (A.R. 666-67). Such report was consistent with Dr. Bagner's 2010 evaluation assessing a Global Assessment of Functioning ("GAF") score of 65 and opining that Plaintiff's condition would improve in less than six

_____

[13] As summarized above, Plaintiff reported to Dr. Rathana-Nakintara in April of 2012 that she had completed two years of therapy and was being prescribed Paxil by her family doctor (A.R. 666-67). It thus appears that the ALJ mischaracterized the record by stating that Plaintiff had received no mental health treatment after the alleged onset date. While an ALJ's material mischaracterization of the record can warrant remand, see, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999), the subject mischaracterization was not material because the ALJ elsewhere acknowledged Plaintiff's post-alleged onset date mental health treatment. See A.R. 784.

months with treatment (A.R. 470).  From the record, it appears that Plaintiff's psychological problems had decreased (A.R. 784).  <u>See, e.g.</u>, A.R. 332-33, 339 (October, 2008 psychiatric report stating that in January of 2008 Plaintiff appeared to have symptoms consistent with PTSD from the robbery, but on follow up in October of 2008, Plaintiff reported improvement from medication and counseling and was assessed with a GAF of 62).

While the ALJ found Plaintiff's alleged mental impairment to be nonsevere, the ALJ stated that Plaintiff's residual functional capacity assessment was based on a consideration of all of Plaintiff's medically determinable impairments (A.R. 785).  The ALJ specifically considered Plaintiff's mental impairment in formulating Plaintiff's residual functional capacity, so any error in failing to find the mental impairment severe was harmless.  <u>See Lewis v. Astrue</u>, 498 F.3d at 911; <u>see also Gray v. Commissioner</u>, 365 Fed. App'x 60, 61-62 (9th Cir. 2010) (finding any Step 2 error harmless where ALJ considered nonsevere mental impairments in determining claimant's residual functional capacity).

**B.    <u>The ALJ Stated Legally Sufficient Reasons for Rejecting the Opinions of the Treating Physicians.</u>**

Generally, a treating physician's conclusions "must be given substantial weight."  <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988); <u>see Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. . . .  This is especially true when the opinion is

that of a treating physician") (citation omitted); see also Orn v. Astrue, 495 F.3d 625, 631-33 (9th Cir. 2007) (discussing deference owed to treating physicians' opinions). Where, as here, a treating physician's opinion is contradicted by another physician, the opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).[14] Contrary to Plaintiff's argument, the ALJ stated sufficient reasons for rejecting the opinions of Dr. Quion and Dr. Ahmed.

Worker's compensation treating orthopedist Dr. Ahmed treated Plaintiff from November of 2007 through August of 2008 – a period long predating the alleged disability period. See A.R. 225-33, 241-99, 305-06, 403-06. In his most recent treatment report from August 27, 2008, Dr. Ahmed diagnosed cervical disc herniation with radiculitis/ radiculopathy, left shoulder impingement syndrome with rotator cuff tendonitis/tear, multiple contusions of the left upper rib (resolved), and anxiety, depression and insomnia (A.R. 229). Dr. Ahmed stated that Plaintiff had a "positive MRI for disc protrusions at C4-C5 and C5-C6" and "restricted mobility with positive foraminal compression test" (A.R. 230); see also A.R. 418-19 (November, 2007 cervical spine

///
///
///
///

---

[14] Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

MRI).[15]

Dr. Ahmed opined that Plaintiff should be precluded from repetitive motion of the neck and, with regard to her left shoulder, repetitive "up to and over the shoulder" activities, with no pushing, pulling, squeezing, and no heavy lifting over 15 to 20 pounds (A.R. 230). Dr. Ahmed opined that Plaintiff should receive future medical care including physical therapy and medication for her pain, cervical epidural steroid injections, and left shoulder arthroscopic decompression surgery (A.R. 231). There is no record that Plaintiff has ever had any epidural steroid injections or surgery on her shoulder.[16]

---

[15] A November, 2007 left shoulder MRI showed no rotator cuff tear, fracture or dislocation, and "mild diffuse increased signal intensity within the humeral marrow" (A.R. 420-21). A December, 2008 left shoulder MRI reportedly showed mild impingement and tendinitis but no rotator cuff tear (A.R. 307).

[16] Agreed Medical Examiner Dr. Jack Akmakjian, an orthopedic surgeon, evaluated Plaintiff in November of 2008 – just two months after Dr. Ahmed's last evaluation (A.R. 309-17). Dr. Akmakjian had evaluated Plaintiff in June of 2008, and had recommended trigger point injections to help with her left shoulder and neck, but Plaintiff declined (A.R. 310). On examination, Plaintiff reportedly had radiating pain in the neck but full range of motion and no crepitus, discomfort across the left anterior chest wall with some swelling and associated tenderness, which Dr. Akmakjian opined was from referred pain from her neck, and some left shoulder pain with limited range of motion and positive impingement sign (A.R. 310-14). Dr. Akmakjian diagnosed left anterior chest wall swelling, most probably from the cervical spine, cervical radiculitis, and left shoulder impingement syndrome (A.R. 314). Dr. Akmakjian opined that Plaintiff should be precluded from very heaving lifting and repetitive overhead work (A.R. 315-16; see also A.R. 307-08 (January, 2009, follow up evaluation post-MRI study of Plaintiff's spine and shoulder)).

The ALJ gave "little" weight to Dr. Ahmed's opinion, stating that the opinion was remote in time (i.e., issued more than one year prior to the alleged onset date). See A.R. 789. Although Dr. Ahmed assessed greater limitations than the ALJ found to exist by limiting Plaintiff to no repetitive motion of the neck or up to and over the shoulder activities, the ALJ permissibly could reject Dr. Ahmed's opinion for its remoteness in favor of the examining physicians' opinions post-dating the alleged onset date. See Carmickle v. Commissioner, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance") (citation omitted); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (an ALJ may reject a medical opinion that includes no specific functional capacity assessment during the relevant time period).

Internist Dr. Quion treated Plaintiff five times (during the period from December of 2010 through March of 2013) before issuing her opinion (A.R. 671-92). Plaintiff presented to Dr. Quion as a new patient in December of 2010, reporting, inter alia, having a migraine for three days, neck and shoulder pain, low back pain with radiculopathy to the right thigh and hips, pain in both feet, and depression and anxiety for which she was taking Paxil (A.R. 675). On examination, Plaintiff reportedly had low back pain with radiculopathy to the lower extremities (A.R. 675). Dr. Quion assessed migraine variants, low back pain with radiculopathy to the lower extremities, cervical disc degeneration, and depression with anxiety (A.R. 675). Dr. Quion prescribed medications (A.R. 675-76). Plaintiff returned in April of 2011, for pre-operative evaluation for laparoscopy and

hysteromy for ovarian cysts (A.R. 679).  She reportedly had headaches, chest pain (coschondritis, chest wall pain), abdominal pain, and depression, but no joint pain, back pain or myalgias (A.R. 679). Examination findings were unchanged from December of 2010 (A.R. 680). Dr. Quion assessed abdominal pain, migraines, and depression, and cleared Plaintiff for surgery (A.R. 680).[17]  Plaintiff returned in December of 2011 for medication refills, reporting pain in her lower stomach (A.R. 673).  On examination, she exhibited an ingrown toenail but no other reported abnormalities (A.R. 673).  Dr. Quion's assessment and plan were unchanged from the prior visit (A.R. 673-74). Plaintiff returned in April of 2012 to refill her migraine medication, reporting "episodes" every day (A.R. 671).  Examination findings were unchanged from the prior visits (A.R. 671).  Dr. Quion assessed migraines and continued Plaintiff's medications (A.R. 671-72).

Plaintiff provided Dr. Quion with a "Multiple Impairment Questionnaire" form in April of 2012, which Dr. Quion did not complete until March 29, 2013 (A.R. 693-700).  On the form, Dr. Quion noted that Plaintiff had been treated every three months, with her most recent treatment occurring on March 26, 2013 (A.R. 694; see also A.R. 702-05 (March, 2013 treatment note briefly indicating Plaintiff's medications were continued)).  Dr. Quion diagnosed migraines, costochondritis, Tietze's syndrome, cervical arthritis, major depression and asthma (A.R. 694).  Where asked to provide positive clinical findings to support the diagnoses, Dr. Quion referenced an X-

---

[17]  A pre-operative chest x-ray from June of 2011 was normal (A.R. 686).  A comparison chest x-ray from September of 2012 was also normal (A.R. 689).

ray showed cervical arthritis diagnosed in 2009, major depression diagnosed by San Bernardino County Behavioral Health, and otherwise noted that medications helped Plaintiff's conditions (A.R. 694). Dr. Quion reported that Plaintiff has the following symptoms: neck pain, chest wall pain, shoulder pain and upper back pain (about three times a week), moderate to severe throbbing headaches with photosensitivity and nausea (four to five times a week), chest wall tenderness and deep depression (A.R. 694-95). Dr. Quion opined that physical activity, too cold or too hot weather, loud noises and exposure to sun contribute to Plaintiff's pain (A.R. 695). Dr. Quion estimated Plaintiff's pain and fatigue to be between eight and 10 on a scale of one to 10 (A.R. 695). However, Dr. Quion also indicated that she had been able to relieve Plaintiff's pain completely with medication without unacceptable side effects (A.R. 696).

Dr. Quion opined that Plaintiff could sit three to four hours and stand and walk three to four hours in an eight-hour workday, with the opportunity to get up and move around every three hours (A.R. 696). Dr. Quion indicated that it would be necessary to recommend that Plaintiff not stand and walk continuously in a work setting (A.R. 696). Dr. Quion opined that Plaintiff could frequently lift and carry up to 10 pounds, and occasionally lift and carry up to 20 pounds, with limitations in repetitive reaching, handling, fingering or lifting (A.R. 696). Dr. Quion indicated that Plaintiff could do repetitive movement until her chest wall starts to hurt (A.R. 696). Dr. Quion opined that Plaintiff would have "minimal" limitations in grasping, turning and twisting objects, and "moderate" limitation in using her fingers/hands for fine manipulation and using her arms for reaching

(A.R. 697). Dr. Quion opined that Plaintiff would need to take
unscheduled breaks every three to four hours, for 20 to 30 minutes,
and that Plaintiff would miss work more than three times a month due
to her impairments (A.R. 699). Dr. Quion indicated that Plaintiff
would be limited to no pushing or pulling, no stooping, and certain
environmental limitations (A.R. 700).

The ALJ gave "little" weight to Dr. Quion's opinions because the
opinions were unsupported by Dr. Quion's own treatment records or by
objective clinical findings (A.R. 789). An ALJ may properly reject a
treating physician's opinion where, as here, the opinion is not
adequately supported by treatment notes or objective clinical
findings. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.
2008) (ALJ may reject a treating physician's opinion that is
inconsistent with other medical evidence, including the physician's
treatment notes); Batson v. Commissioner, 359 F.3d 1190, 1195 (9th
Cir. 2004) ("an ALJ may discredit treating physicians' opinions that
are conclusory, brief, and unsupported by the record as a whole . . .
or by objective medical findings"); Connett v. Barnhart, 340 F.3d 871,
875 (9th Cir. 2003) (treating physician's opinion properly rejected
where physician's treatment notes "provide no basis for the functional
restrictions he opined should be imposed on [the claimant]"); Matney
v. Sullivan, 981 F.2d 1016, 1019-20 (9th Cir. 1992) ("The ALJ need not
accept an opinion of a physician - even a treating physician - if it
is conclusory and brief and is unsupported by clinical findings"); 20
C.F.R. §§ 404.1527(c), 416.927(c) (factors to consider in weighing
treating source opinion include the supportability of the opinion by
medical signs and laboratory findings, the length of the treatment

relationship and frequency of examination, the nature and extent of
the treatment relationship including examinations and testing, whether
the opinion is from a specialist concerning issues related to the
source's area of specialty, as well as the opinion's consistency with
the record as a whole).

As the ALJ observed, Dr. Quion's treatment of Plaintiff was
relatively cursory, and Dr. Quion's treatment notes do not contain
diagnostic testing results or other objective findings suggestive of
disability. Also significant is Dr. Quion's statement that she had
succeeded in relieving Plaintiff's pain completely without
unacceptable side effects (A.R. 696). Given the paucity of Dr.
Quion's treatment notes predating her opinion, and her suggestion that
she was able to control Plaintiff's symptoms, the ALJ stated legally
sufficient reasoning for discounting Dr. Quion's opinion.[18]

/// 

/// 

/// 

/// 

---

[18]     Plaintiff provided additional treatment notes from Dr.
Quion for treatment from 2014 to 2016, post-dating Dr. Quion's
residual functional capacity assessment and the prior ALJ's
decision (A.R. 989-1036). Plaintiff did not provide an updated
opinion from Dr. Quion. The additional records are also cursory
and do not support Dr. Quion's opinion. Plaintiff presented
mostly for medication refills, and her examination results were
unremarkable – the records simply duplicated examination results
from the first visit in July of 2014, which noted throat
congestion but no other reported abnormal findings. See A.R.
989-1036 (records for treatment in July, November, December of
2014, January, March, June, August, and December of 2015, and
January, February, April, May, and June of 2016).

## IV. The ALJ Stated Legally Sufficient Reasons for Finding Plaintiff's Subjective Statements and Testimony Less Than Fully Credible.

Plaintiff also challenges the legal sufficiency of the ALJ's stated reasons for finding Plaintiff's subjective statements and testimony less than fully credible.  See Plaintiff's Motion, pp. 8-10; Plaintiff's Reply, p. 3.  An ALJ's assessment of a claimant's credibility is entitled to "great weight."  Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Where, as here, an ALJ finds that the claimant's medically determinable impairments reasonably could be expected to cause some degree of the alleged symptoms of which the claimant subjectively complains, any discounting of the claimant's complaints must be supported by specific, cogent findings.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must offer "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of "malingering").[19]  An ALJ's credibility finding "must be sufficiently specific to allow a reviewing court to conclude the ALJ

---

[19]    In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d 1090, 1102 (9th Cir. 2014); Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases).  In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal citations and quotations omitted); see also Social Security Ruling 96-7p (explaining how to assess a claimant's credibility), superseded, Social Security Ruling 16-3p (eff. Mar. 28, 2016).[20]  As discussed below, the ALJ stated sufficient reasons for deeming Plaintiff's subjective complaints less than fully credible.

### A.  Summary of Plaintiff's Testimony and Statements

Plaintiff testified that she stopped working in 2007, after she was robbed while at work.  See A.R. 804-05; see also A.R. 42 (Plaintiff testifying at the first administrative hearing that she stopped working when her doctor "took [her] off" work due to PTSD after the robbery).  Plaintiff had not tried to find any other work since 2007 (A.R. 805).  Plaintiff testified that she started having different mental and physical problems after the robbery, namely, anxiety, depression, Tietze's syndrome (where her chest swells and affects her neck and shoulder), migraine headaches, degenerative disease in her neck, neck and back pain, hip pain, asthma, and swelling in her hands and feet.  See A.R. 805-07, 812-13; see also

---

[20]    The appropriate analysis in the present case would be substantially the same under either SSR.  See R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (observing that only the Seventh Circuit has issued a published decision applying SSR 16-3p retroactively; also stating that SSR 16-3p "implemented a change in diction rather than substance") (citations omitted); see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (suggesting that SSR 16-3p "makes clear what our precedent already required").

A.R. 188 ("Disability Report - Adult" form asserting that Plaintiff stopped working because of claimed depression, post traumatic stress disorder, migraines, anxiety attacks, degenerative disc disease in the neck, asthma, and memory loss). Plaintiff had just consulted with a rheumatologist a month before the hearing, and reportedly found out she also has "RA" (rheumatoid arthritis) (A.R. 806). Plaintiff also said she now has sporadic urinary incontinence, for which she requires access to a bathroom (A.R. 811-12).[21]

Plaintiff said she has migraines eight to 10 times a month that last for two to three days for which she must take medicine and lie down (A.R. 810-11). Plaintiff said she has daily pain which causes some difficulty walking and sitting for which she also lies down (A.R. 806-07). Plaintiff said she has anxiety attacks six or seven times a month, and that she believed she has difficulty dealing with the public (A.R. 814-15). Plaintiff said that her Tietze's syndrome causes her to have difficulty reaching overhead (A.R. 811). Plaintiff testified that her hand swelling causes her to have difficulty turning and grasping things and limits her ability to lift and carry objects (A.R. 813). Plaintiff estimated that she has five "bad" days a week due to pain (A.R. 815).

Plaintiff testified that, on a typical day, she gets up, eats breakfast, showers, and lies down where she watches television (A.R.

---

[21]     Clinical notes from July of 2009 indicated that Plaintiff then had "mixed incontinence," but medication reportedly had stopped her from leaking urine (A.R. 428). There are no other treatment notes regarding complaints of incontinence.

807).  Plaintiff can make her own meals, do her own personal care, and grocery shop (A.R. 808-09).  At the first administrative hearing in 2014, Plaintiff had testified that, apart from lying down, she kept herself busy by doing "stuff" around the house like dusting, watching television, using a computer, going to the grocery store or to church (A.R. 53-54).[22]

**B.    The ALJ's Stated Reasoning is Legally Sufficient.**

The ALJ acknowledged that Plaintiff's impairments could reasonably be expected to cause some alleged symptoms, but found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible (A.R. 786-89).  The ALJ reasoned that Plaintiff's subjective statements were not entirely consistent with the medical evidence and other evidence

---

[22]    It appears that Plaintiff reported to her health care providers that Plaintiff engages in more extensive daily activities than admitted in her testimony and other statements. Agreed Medical Examiner Dr. Feldman noted in October of 2008 that Plaintiff reportedly spent her days taking care of her personal needs, walking or driving her children to the bus stop, cleaning, cooking, doing laundry, dishes, taking care of her children (ages 15, 11, and 9) at home, watching television, reading, listening to music, seeing her boyfriend, and attending doctor's appointments (A.R. 333; compare A.R. 310 (Plaintiff reporting to Agreed Medical Examiner Dr. Akmakjian in November of 2008 that she had difficulty with activities of daily living including vacuuming, doing dishes, and lifting or carrying things including groceries)).  While Plaintiff complained of headaches three times a week lasting for hours, she reportedly continued her activities through headaches (A.R. 333).  Consultative examiner Dr. Bagner noted in March of 2010 that Plaintiff reportedly spent her days getting up and getting her kids up for school, doing some housework, trying to nap, crocheting, and that Plaintiff reported that she can drive (A.R. 468).

in the record (A.R. 786).  For example, the ALJ observed: (1) although
Plaintiff alleged an onset date of January 31, 2010, Plaintiff had
virtually no earnings since 2007, when she stopped working after the
robbery (A.R. 786); (2) while Plaintiff complained of chronic neck
pain and was found to have cervical degenerative disc disease, Dr.
Quion's treatment notes indicated that Plaintiff is prescribed
analgesics and her physical examinations are unremarkable (A.R. 786-
87); (3) while Plaintiff complained of migraine headaches, the
treatment notes do not reflect the frequency of migraines Plaintiff
reports since many notes do not contain any complaints of migraines
(A.R. 787); and (4) a review of medical records from the time
Plaintiff stopped working in 2007 until after the alleged onset dates,
and, specifically, consideration of Dr. Quion's later unremarkable
examinations, suggests that Plaintiff's condition improved (A.R. 789).
The ALJ also cited Plaintiff's daily activities of caring for her
children, performing personal care, preparing meals, doing household
chores, driving, shopping, and managing money as a basis for
discounting Plaintiff's subjective complaints (A.R. 789).

An ALJ may consider a claimant's work record when weighing the
claimant's subjective complaints.  See 20 C.F.R. §§ 404.1529(c)(3),
416.929(c)(3) (in evaluating the intensity and persistence of a
claimant's symptoms, the fact finder "will consider all of the
evidence presented, including information about [the claimant's] prior
work record"); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)
(claimant's limited work history can affect credibility of claims
regarding inability to work).  Plaintiff testified that she had not
tried to find any work since 2007 (A.R. 805).

An ALJ may also consider statements by medical sources when weighing the credibility of a claimant's subjective complaints. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("We will consider . . . statements by your medical sources" when assessing credibility); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (upholding rejection of claimant's claim of excessive pain where ALJ identified contrary opinion of claimant's examining physician as specific evidence for discounting credibility). An ALJ may also consider medical evidence suggesting that a claimant's symptoms have improved or successfully responded to medication when weighing a claimant's subjective complaints. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe symptoms); Morgan v. Commissioner, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discredited claimant's subjective complaints by citing physician's report that symptoms improved with medication); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (ALJ did not err in considering that medication "aided" claimant's symptoms in assessing claimant's credibility); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (ALJ may consider whether treatment produced satisfactory response and control of pain). Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for social security benefits. See Warre v. Commissioner, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, the ALJ cited the unremarkable records from Dr. Quion, who opined that Plaintiff's pain was completely controlled with medication without

unacceptable side effects (A.R. 696).

An ALJ permissibly may rely in part on a lack of objective medical evidence to discount a claimant's allegations of disabling symptomology. See Burch v. Barnhart, 400 F.3d 676, 681 (2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (same); see also Carmickle v. Commissioner, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); Social Security Ruling 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . ."). Although inconsistencies between subjective symptom testimony and objective medical evidence cannot be the sole basis for rejecting a claimant's testimony, Burch v. Barnhart, 400 F.3d at 681, the ALJ did not reject Plaintiff's complaints solely on the ground that the complaints were inconsistent with the objective medical evidence. For example, the ALJ also relied in part on the nature of Plaintiff's activities of daily living as not supporting her claim of disability (A.R. 789).

Inconsistencies between admitted activities and claimed incapacity properly may impugn the accuracy of a claimant's testimony and statements under certain circumstances. See, e.g., Thune v. Astrue, 499 Fed. App'x 701, 703 (9th Cir. 2012) (ALJ properly

discredited pain allegations as contradicting claimant's testimony that she gardened, cleaned, cooked, and ran errands); <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" was sufficient explanation for discounting claimant's testimony). However, it is difficult to reconcile certain Ninth Circuit opinions discussing when a claimant's daily activities properly may justify a discounting of the claimant's testimony and statements. <u>Compare</u> <u>Stubbs-Danielson v. Astrue</u> <u>with</u> <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); <u>see also</u> <u>Diedrich v. Berryhill</u>, 874 F.3d 634, 642-43 (9th Cir. 2017) (daily activities of cooking, household chores, shopping and caring for a cat insufficient to discount the claimant's subjective complaints).

In the present case, the Court finds that the activities Plaintiff admitted to her treatment providers and at the hearing properly undermined Plaintiff's complaints of allegedly disabling pain. The ALJ properly could rely on these admitted activities in discounting Plaintiff's claim that she supposedly must lie down most of every day due to pain. <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d at 857 ("The ALJ also pointed out ways in which [the claimant's] claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy

and various other meetings every week.").[23]

**CONCLUSION**

For all of the foregoing reasons,[24] Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.[25]


LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: October 24, 2018.


/s/
_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[23]    The Court should not and does not determine de novo the accuracy of Plaintiff's testimony and statements concerning her subjective symptomatology.  It is for the Administration, and not this Court, to evaluate the accuracy of Plaintiff's testimony and statements regarding the intensity and persistence of Plaintiff's subjective symptomatology.  See Magallanes v. Bowen, 881 F.2d 747, 750, 755-56 (9th Cir. 1989).

[24]    The Court has considered and rejected each of Plaintiff's arguments.  Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the Administration.  See generally McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).

[25]    To the extent Plaintiff's conditions may have worsened after the ALJ's most recent decision, nothing prevents Plaintiff from filing a new application based on new evidence.  See Sanchez v. Secretary of Health and Human Servs., 812 F.2d 509, 512 (9th Cir. 1987) (when a claimant has new evidence of a disability, the correct procedure is to reapply for benefits; if she can prove a disabling impairment, she will be entitled to benefits as of the date of the new application).